303 So.2d 625 (1974)
BARING INDUSTRIES, INC., a Florida Corporation, Petitioner,
v.
RAYGLO, INC., a Florida Corporation, D/B/a Bob & Len's Modern Cleaners, Respondent.
No. 45022.
Supreme Court of Florida.
November 7, 1974.
Rehearing Denied December 18, 1974.
Arthur J. England, Jr. and James W. Beasley, Jr. of Paul & Thomson, Miami, for petitioner.
Lewis N. Jack, Jr. of Preddy, Haddad, Kutner & Hardy, Edward A. Perse of Horton & Perse, Miami, for respondent.
ERVIN, Justice.
We review by writ of conflict certiorari the decision of the District Court of Appeal, Third District, in the case of Baring Industries, Inc. v. Rayglo, Inc. (Fla.App. 1974), 287 So.2d 705.
The principal question is whether an appellate court can legally affirm a large unremitted portion of the damages awarded by a jury in a civil case when the plaintiff's complaint fails to contain allegations conforming to the rationale of the District Court affirming the damages.
From the record proper in the trial court it appears in plaintiff-respondent Rayglo, Inc.'s complaint that a written contract was entered into between it and defendant-petitioner Baring Industries, Inc. for the sale and installation by Baring of certain rebuilt machineries to be used in Rayglo's laundry and dry cleaning operation, including furnishing the labor to install the machineries in a good and workmanlike manner, all for the sum of $7,380. Rayglo *626 alleged that Baring breached the contract in that it did not install the machinery in a good and workmanlike manner; failed to install certain equipment required in the contract and did not deliver and install the equipment "as soon as possible" as required by the contract. That as a result of the unworkmanlike construction and excessive delays in the installation of the equipment Rayglo incurred
"Considerable losses and has been required to expend large sums of money in order to maintain operations and has suffered the permanent impairment of his business reputation and has not been able to properly service his clients."
This is the only language in the complaint concerning the nature of the damages suffered by Rayglo.
By answer and counterclaim Baring admitted execution of the contract but otherwise denied the allegations of the complaint. Its answer included a counterclaim that it delivered the equipment and installed it in accordance with the contract, but that Rayglo refused to execute "the standard security agreement and financing statement" and failed to make any payments to Baring; and that title to the equipment was retained in Baring and that repossession was sought with damages for Rayglo's wrongful detention.
The record reflects a summary judgment was entered in favor of Baring granting repossession to it of the equipment.
Thereafter trial was had on the complaint and answer and a jury verdict in favor of Rayglo in the sum of $25,000 and judgment thereon resulted.
In the District Court's appellate review of the judgment it said in part in its opinion:
"Plaintiff corporation, Rayglo, Inc., whose principal officers were Mr. and Mrs. Simpson, purchased a wholesale laundry and dry cleaning business known as Modern Cleaners for $12,000 in January 1971. Modern had been a profitable operation for 15 years and the Simpsons retained in their employ Modern's plant manager who had operated the plant for the past 10 years. On February 16, 1971 plaintiff entered into a contract to purchase from defendant, Baring Industries, Inc., three pieces of rebuilt equipment for the price of $7,600. The contract further provided that it would not become binding until plaintiff's credit was approved and that delivery would be as soon as possible. Defendant estimated that delivery would be made in six to eight weeks. On March 17, 1971 plaintiff's credit was approved and on the same day defendant's representatives came and removed some old equipment which constituted a part of the purchase price of the new equipment. This new equipment was not delivered until April 17, 1971. Plaintiff's operation became crippled as a result of this delay and it became necessary to send out its work to subcontractors. The Simpsons had to make additional cash investments, totaling approximately $7,000, in March 1971 to keep the business running. Between March 1971 and July 1971, plaintiff lost several of its largest and oldest accounts because of lost or damaged articles, bad service and late deliveries. Plaintiff attributed the above to the poor work performed by the inefficient subcontractors. When the new equipment was delivered in April, it was defective in several respects. Defendant repaired some of the defects, but refused to repair others because plaintiff allegedly refused to sign a financing agreement. In October 1971 the business folded and thereafter plaintiff filed a suit alleging that defendant had breached the sales contract by failing to deliver certain equipment on time and providing defective equipment. The jury returned a verdict for plaintiff in the amount of $25,000. Defendant then made motions for judgment in accordance with directed verdict, new trial and remittitur which were denied.

*627 "Defendant-appellant raises several points on appeal, only one of which has merit, to wit: the evidence at trial was insufficient to support the jury award of $25,000.
"... After having completed our examination, we conclude that the evidence in the case sub judice, viewed most favorable toward the plaintiff, could support only a maximum verdict and judgment in the sum of $19,000 which represents approximately the total investment of the plaintiff in the laundry and dry cleaning enterprise during its 10 short months of operation. ..." (Emphasis supplied.) 287 So.2d at 705-706.
As we view the record proper and particularly the complaint, the language therein alleging the general damages suffered does not appear sufficient to legally charge Baring as the supplier of the equipment with liability for the loss of investment or profits of Rayglo, as the District Court seems to hold. The contracts attached to the complaint were the usual form of retain title equipment contracts. The contract price for the equipment and its installation was $7,600. There was nothing in the contract referring specifically to any indemnification of Rayglo in the event of Baring's breach of the contract. Furthermore, there were no allegations in the complaint concerning loss of investment, loss of profits or accounts.
Petitioner urges conflict with Wallace v. Cruit (1930), 99 Fla. 374, 126 So. 307, in which this Court reversed a money decree explaining that there was no "foundation in the bill of complaint or in the proof" for such a decree.
Conflict is also urged with Magic City Grocery, Inc. v. Knowles (1938), 132 Fla. 656, 181 So. 889, in which a cause concerning the transfer of capital stock was reversed and remanded by this Court for the following reason:
"[I]n material respects the relief granted by the final decree is not in entire harmony with the allegations of the bill of complaint and the evidence adduced."
For the breach of the contract for the sale and installation of the equipment, it will be noted the District Court concluded concerning Rayglo's damages that the evidence
"... could support only a maximum verdict and judgment in the sum of $19,000 which represents approximately the total investment of the plaintiff in the laundry and dry cleaning enterprise during its 10 short months of operation. Thus, we find the verdict in the case at bar excessive... ." (Emphasis supplied.) 287 So.2d at 706.
We therefore think an improper measure of damages was accepted by the District Court in this case in view of the insufficiency of the allegations in the complaint. The complaint alleges breaches of the equipment contract but does not contain specific allegations that the breach resulted in the foreseeable loss of Rayglo's investment over a period of months; that is, loss of accounts, loss of profits, loss of business during the period. Instead, absent allegations of greater specificity, the damages should have been restricted to losses commensurate with the use or rental value of the contract equipment over the period during which it was not delivered and installed. Consideration should have been given at trial as to whether Rayglo reasonably could have mitigated its losses by obtaining equipment from another supplier. We do not believe loss of investment, etc. should have been implied from the general language in the complaint claiming damages for the breach of the equipment sale and installation contract.
We do not intend by the foregoing pronouncements to prescribe any hard and fast rule as to the proper measure of special damages that might have been applied in this case if properly pleaded, but only negatively hold that the measure permitted was improper under the allegations of the complaint which laid no clear basis for "investment" *628 losses, that is to say those which could be reasonably foreseen in the event of a breach by failure to promptly deliver and install the equipment. Baring was not put on notice of the extent of the special damages claimed.
Reference generally is made to 9A Fla. Jur., Damages, § 81 et seq.; 22 Am.Jur.2d, Damages, § 57 et seq. The rule appears to be in contract actions that "lost profits will be allowed only if the profits were reasonably within contemplation of the defaulting party at the time the contract was entered into." 9A Fla.Jur., Damages, p. 313.
"Recovery of conjectural or speculative profits will be denied." 9A Fla.Jur., Damages, p. 317.
"In accordance with the general rule of damages recoverable on breach of contract, in order that there may be recovery of profits by reason of breach of contract, the loss must be the natural and proximate result of the breach ..." 9A Fla.Jur., Damages, p. 317.
After accepting conflict jurisdiction of this cause, we were at liberty to review the transcript. We note in the transcript that the trial judge on at least four separate occasions ruled that evidence of Rayglo's investment in the laundry and dry cleaning enterprise was inadmissible. However, paradoxically, the trial judge denied motion for new trial based on the ground that the jury did nevertheless consider Rayglo's loss of investment in its enterprise in arriving at its verdict of $25,000 damages and the District Court followed suit, although it allowed a reduction remittitur thereof of $6,000.
The District Court in agreeing to a major portion of the damages based on inadmissible evidence regarding loss of investment, conflicted with controlling decisions holding that only damages awarded on the basis of competent evidence gleaned from the evidence is proper. Compare State ex rel. Mercantile Investment Co. v. Tedder (1942), 150 Fla. 175, 8 So.2d 470, and Magic City Grocery, Inc. v. Knowles, supra.
We conclude that the decision of the District Court must be quashed.
On remand the trial court should permit opportunity to Rayglo to demonstrate if it can whether amendment to the complaint should be allowed to claim damages for investment losses. This contemplates that Rayglo must prima facie show from the facts and applicable law that such damages were foreseeable and contemplated by the parties before amendment of the complaint is permitted. At any rate, a new trial appears warranted whether the complaint is amended or not.
We do not undertake to prescribe either directly or by implication whether the facts in this matter warrant special damages. Our decision only goes to quashal of what has been done improperly already and leaving open for further consideration at trial level whether special damages other than those that would foreseeably flow from an ordinary breach of an equipment contract are justified.
The decision of the District Court is quashed with direction that further proceedings below accord herewith.
It is so ordered.
ADKINS, C.J., and ROBERTS and McCAIN, JJ., concur.
BOYD, J., dissents.